UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DERRICK HILL,

                                          Plaintiff,

            v.                                                    9:20-CV-0441
                                                                  (DNH/ATB)


D. LaCLAIR, et al.,

                                          Defendants.

_____

APPEARANCES:

DERRICK HILL
Plaintiff, Pro Se
18-A-0259
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953


DAVID N. HURD
United States District Judge

**DECISION AND ORDER**

**I.      INTRODUCTION**

       The Clerk has sent to the Court for review a complaint submitted by pro se plaintiff

Derrick Hill asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title II of the

Americans With Disabilities Act, 42 U.S.C .§ 12101, *et seq*. ("ADA"), and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*. ("Rehabilitation Act"), together with an

application to proceed in forma pauperis ("IFP"), and motion for a preliminary injunction.  Dkt.

No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 4 ("Preliminary Injunction Motion").

Plaintiff, who is incarcerated at Franklin Correctional Facility ("Franklin C.F."), has not paid the filing fee for this action.

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[1]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP Application (Dkt. No. 2), together with his inmate account statement (Dkt. No. 2-1), which demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate authorization form required in this District.  Dkt. No. 3.  Accordingly, plaintiff's IFP Application is granted.

## III.    SUFFICIENCY OF THE COMPLAINT

### A.    Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action

---

[1]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  28 U.S.C. § 1915(g).  Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

. . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal

---

[2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*. (internal quotation marks and alterations omitted).

## B.    Summary of the Complaint

Plaintiff asserts allegations of wrongdoing that occurred while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Franklin C.F.  *See generally* Compl.

The complaint names Franklin C.F. and the following individuals as

4

defendants:  (1) Franklin C.F. Superintendent D. LaClair; (2) Deputy Superintendent of

Programs V. Barber; (3) Deputy Superintendent of Security F. Quimby; (4) S.O.R.C. Traynor;

and (5) Nurse Administrator M. Ojida.  Compl. at 1-2.

The complaint is sparse, and largely incomprehensible by itself.  However, the exhibits

attached to the complaint show the following:

> (1) on July 31, 2019, plaintiff wrote to the Director of Health
> Services requesting that he be "transfer[r]ed to a treatment
> facility" able to handle his diagnosed mental illness, and indicated
> that he previously made this request to defendants LaClair,
> Barber, and the Deputy Superintendent of Administration
> (presumably defendant Ojida), Dkt. No. 1-1 at 12;
>
> (2) the Director of Health Services responded to plaintiff's
> submission by advising that the request he submitted was "for
> visual impairment[,]" and that he "must write to OMH" regarding
> "OMH accommodations[,]" Dkt. No. 1-1 at 13;
>
> (3) on August 1, 2019, plaintiff submitted a request for a copy of
> his "eye exam from Downstate[,]" and the Nurse Administrator
> (presumably defendant Ojida) advised that he "may want to
> contact Downstate" because the records he sought were not at
> Franklin C.F., Dkt. No. 1-1 at 4;
>
> (4) on September 2, 2019, plaintiff submitted a request for an
> update on his "reasonable accommodation" and was advised by
> defendant Barber that his request for "reasonable accomm. based
> on vision impairment was denied [on July 30, 2019] pending
> medical verification[,]" and that he should follow up after his
> optometrist appointment on September 24, 2019, Dkt. No. 1-1 at
> 8;
>
> (5) in October, 2019, plaintiff requested the names of the facilities
> "on the list for vision impaired inmates" and was advised by a
> non-party official that he should write to defendant Barber
> regarding any accommodation request, Dkt. No. 1-1 at 10;
>
> (6) on November 11, 2019, plaintiff submitted a request for
> "reasonable accommodation" and removal of his "medical hold[,]"
> and was advised by the Nurse Administrator (presumably
> defendant Ojida) to bring his glasses to his next doctor's

appointment to verify the need for accommodations, Dkt. No. 1-1 at 6;

(7) on November 18, 2018, plaintiff submitted a request for defendant Barber to "make a determination" regarding his "visual impairment" accommodation request, and was advised that he was "only diagnosed as blind in one eye" and that a "reasonable accommodation . . . is based on visual acuity in the better eye[,]" Dkt. No. 1-1 at 14;

(8) apparently later on November 18, 2019, plaintiff submitted a follow-up request for defendant Barber to review his medical records, and was advised that "the eye doctor . . . agreed that until further testing is completed[, plaintiff] does not meet the criteria" for a reasonable accommodation, Dkt. No. 1-1 at 16;

(9) on November 19, 2019, plaintiff renewed his request for a reasonable accommodation, and stated that his vision is the same in both eyes as shown in his medical records, Dkt. No. 1-1 at 18;

(10) on February 13, 2020, plaintiff received a "formal notice" from defendant Traynor on behalf of the "Time Allowance Committee[,]" advising of a scheduled hearing on February 19, 2020, and a potential recommendation not to grant plaintiff his total authorized amount of good time based on his refusal to complete various programs, Dkt. No. 1-1 at 20;

(11) in March, 2020, plaintiff filed a grievance regarding his concerns about "COVID-19[,]" which was denied by the Inmate Grievance Review Committee as seeking action "beyond the scope of the facility[,]" Dkt. No. 1-1 at 2; and

(12) on April 8, 2020, defendant LaClair affirmed the denial of plaintiff's grievance, Dkt. No. 1-1 at 3.

Mindful of the information in the exhibits, the following facts are set forth as alleged by plaintiff in the complaint.

Plaintiff "request[ed] [a] reasonable accommodation for inmates with sensorial disabilities[,]" which was denied by ADSP C. Leonard (not a party). Compl. at 3. Plaintiff requested to meet with defendant LaClair or a "designee for review" but was denied a review.

6

*Id.* Plaintiff "ha[s] been put on a physical and mental limitation on many major life activities[,]" and his "mental impairment has worsened" due to increased stress, which "activated" his "P.T.S.D[.]" and prevented him from participating in programs. *Id.*

As a result of not receiving a "reasonable accommodation," plaintiff could not participate in programs, which "led to loss of good time[.]" Compl. at 3. Defendants Traynor and Quimby recommended plaintiff for loss of good time. *Id.*

"[I]nmates with COVID-19 symptoms" are incarcerated at Franklin C.F. Compl. at 3. Plaintiff requested a "mental health transfer to get closer to [his] family" and a "COVID-19 'Prison Release Order[.]'" *Id.* Both requests were denied. *Id.*

The Court liberally construes the allegations in the complaint to assert the following claims against the defendants in their individual and official capacities: (1) Eighth Amendment medical indifference claims against defendants LaClair, Barber, Ojida, and Franklin C.F.; (2) ADA and Rehabilitation Act claims against defendants LaClair, Barber, Ojida, and Franklin C.F.; (3) Eighth Amendment conditions-of-confinement claims against defendants LaClair, Barber, Ojida, and Franklin C.F.; and (4) Fourteenth Amendment due process claims against defendants Traynor, Quimby, and Franklin C.F.

Plaintiff seeks money damages and injunctive relief. Compl. at 5.[3] For a complete statement of plaintiff's claims, reference is made to the complaint.

## C.   Analysis

Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42

---

[3] Insofar as plaintiff seeks a release from prison, such relief must be sought through a habeas corpus proceeding.

U.S.C. § 1983. "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal*, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." *Iqbal* 556 U.S. at 676.

### 1. Eleventh Amendment Immunity

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). As relevant here, it is well-settled that Congress did not abrogate

states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

State immunity extends not only to the states, but also to state agencies.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U.S. 139, 142-47 (1993); *McGinty v. New York,* 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'"); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself.").

Thus, plaintiff's Section 1983 claims for damages against Franklin Correctional Facility, which is a "branch" of DOCCS, fail because this entity is absolutely immune from this lawsuit.  *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims against DOCCS on Eleventh Amendment grounds); *Rivera v. Goord*, 119 F. Supp. 2d 327, 336 (S.D.N.Y. 2000) (defendant correctional facility immune from suit since it is a branch of a state agency, the Department of Corrections); *Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("[T]he New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself."); *Millhouse v.*

*New York State Dep't of Corr. Servs.*, No. 9:09-CV-1297 (LEK/RFT), 2009 WL 10675929, at

*3 (N.D.N.Y. Dec. 31, 2009) ("[A] state correctional facility, which has no separate legal

existence, is generally referred to as a "branch" of DOCS and, as such, is immune from §

1983 liability.").

In addition, the Eleventh Amendment bars Section 1983 suits for damages against

state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169

(1985) (a claim for damages against state officials in their official capacity is considered to be

a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing*

*Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official

is sued for damages in his official capacity, such a suit is deemed to be a suit against the

state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the

state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the

Eleventh Amendment does not permit suit [under Section 1983] for money damages against

state officials in their official capacities.").

Accordingly, plaintiff's Section 1983 claims for monetary relief against Franklin

Correctional Facility and the named defendants in their official capacities are dismissed with

prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the

Eleventh Amendment.[4]

---

[4] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

## 2.  Eighth Amendment Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs

fall under the umbrella of protection from the imposition of cruel and unusual punishment

afforded by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976).

The Eighth Amendment prohibits punishment that involves the "unnecessary and

wanton infliction of pain" and is incompatible with "the evolving standards of decency that

mark the progress of a maturing society."  *Id*.; *see also Whitley v. Albers*, 475 U.S. 312, 319

(1986) (citing, inter alia, *Estelle*).  While the Eighth Amendment does not mandate

comfortable prisons, neither does it tolerate inhumane treatment of those in confinement.

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349

(1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical

care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance*

*v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).  "First, the

alleged deprivation must be, in objective terms, sufficiently serious."  *Chance*, 143 F.3d at

702 (internal quotation marks and citations omitted).  Addressing the objective element, to

prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the

sense that a condition of urgency, one that may produce death, degeneration, or extreme

pain exists."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"Second, the defendant must act with a sufficiently culpable state of mind," *Chance*,

143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must

demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate

11

health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

In this case, while the exhibits attached to the complaint suggest that plaintiff may suffer from mental illness and have impaired vision, the complaint lacks any allegations which plausibly suggest that plaintiff was ever denied treatment for either of these conditions. Moreover, plaintiff's allegation that officials refused to grant his request for a transfer to a different facility based on his visual impairment is entirely conclusory.

Plaintiff does not allege, for example, why his medical needs associated with his visual impairment could not be accommodated at Franklin C.F.  Thus, the alleged refusal to grant plaintiff's transfer request  suggests only a disagreement with plaintiff's preference, which does not give rise to an Eighth Amendment claim.  *See Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Ayuso v. Griffin*, No. 18-CV-3419, 2020 WL 230090, at *9 (S.D.N.Y. Jan. 14, 2020) (finding, where doctor allegedly refused to transfer plaintiff to an outside hospital and the complaint did not "allege[ ] any facts that would indicate that [plaintiff's] medical needs could only be met adequately at an outside medical facility," that medical indifference claim based on transfer denial was "not sufficiently pleaded"); *Sereika v. Patel*, 411 F. Supp. 2d 397, 407-08 (S.D.N.Y. 2006) (plaintiff's allegation that he was not referred to a specialist was a "mere disagreement in treatment" and did not state a claim for deliberate indifference).

In addition, with respect to plaintiff's mental illness, the exhibits attached to the

complaint appear to show that only the Office of Mental Health could grant a transfer request to accommodate a mental health need, *see* Dkt. No. 1-1 at 13, and the complaint does not allege otherwise.  Furthermore, as with plaintiff's alleged visual impairment, the complaint is devoid of any allegations explaining why his mental health needs could not be accommodated at Franklin C.F.

In short, there is no basis for the Court to plausibly infer from the allegations in the complaint and documents attached thereto that any official at Franklin C.F. denied plaintiff adequate medical or mental health care, let alone did so out of deliberate indifference to plaintiff's serious medical or mental health needs.

Accordingly, plaintiff's medical indifference claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3.  ADA and Rehabilitation Act Claims

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted).  The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id*. (citing 42 U.S.C. § 12132).[5]

Similarly, Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

---

[5]  A state prison is a "public entity" for purposes of the ADA.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Allah v. Goord*, 405 F. Supp. 2d 265, 279 (S.D.N.Y. 2005).

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."  29 U.S.C. § 794(a).

The Second Circuit has noted that "the standards under both statutes are generally the same[.]"  *Wright v. New York State Dep't of Corr*., 831 F.3d 64, 72 (2d Cir. 2016). Moreover, where, as here, the subtle distinctions between the statutes are not implicated, courts "'treat claims under the two statutes identically.'"  *Id*. (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

"In order to establish a prima facie violation under these acts, [an inmate] must show that 1) he is a qualified individual with a disability; 2) DOCCS is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability."  *Wright*, 831 F.3d at 72 (citing *Henrietta D.*, 331 F.3d at 272).  It is well-settled that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."  *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

In this case, liberally construed, the complaint alleges that plaintiff could not participate in prison programs because of his mental and visual impairments, and was denied a transfer request.  *See* Compl. at 3.

Even assuming that plaintiff's alleged mental and visual impairments are each qualifying disabilities, plaintiff has not alleged any facts which plausibly suggest that he was excluded or denied the benefits of some program, activity or service while at Franklin C.F. because of either or both of these disabilities.

14

Indeed, the complaint is devoid of any allegations regarding what programs plaintiff was unable to access as a result of his mental and/or visual impairment, how his mental and/or visual impairment prevented him from accessing such programs, or what accommodation he sought (aside from a transfer) that he was denied.  In addition, the complaint does not identify any program, activity, or service that plaintiff could have accessed at another state correctional facility but not Franklin C.F.

Furthermore, even assuming other correctional facilities offer programs, activities, or services with accommodations for impairments that may be more preferable to plaintiff, the complaint lacks any allegations which plausibly suggest that plaintiff was denied a transfer to another facility *because of* his disability.

Rather, the complaint and documents attached thereto suggest only that officials (1) directed plaintiff to consult OMH regarding his desire to be transferred based on his purported mental impairment, and (2) denied plaintiff's request for an accommodation for a visual impairment pending further testing based on a determination that his condition did not satisfy the requirements for a "reasonable accommodation."  *See* Dkt. No. 1-1 at 13-14, 16, 18.

Accordingly, plaintiff's ADA and Rehabilitation Act claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4.  Eighth Amendment Conditions-of-Confinement Claim

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle*, 429 U.S. at

104.  Although it is clear that the Eighth Amendment "does not mandate comfortable prisons," it does not permit inhumane treatment of those in custody.  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer*, 511 U.S. at 832 and *Rhodes*, 452 U.S. at 349).  Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

"Prison officials are liable under the Eighth Amendment for harm incurred by an inmate if they act with deliberate indifference to the inmate's safety." *Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014).  To satisfy the deliberate indifference standard, a plaintiff must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) "the defendant prison officials possessed sufficient culpable intent." *Hayes v. New York City Dep't of Corr*., 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 834).

The first prong is objective and requires that prison officials provide inmates with "basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 30, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs*., 489 U.S. 189, 199 (1989)).  "The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry." *Hayes*, 84 F.3d at 620.

In particular, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id*.  As the Supreme Court has made clear, "the official must both be aware of facts from which the inference could be drawn that a

16

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, the Court has liberally construed the complaint to assert a conditions-of-confinement claim based on plaintiff's allegation that "inmates with COVID-19 symptoms" are incarcerated at Franklin C.F. following their transfer from Downstate Correctional Facility. *See* Compl. at 3; Dkt. No. 1-1 at 2-3.

As an initial matter, the complaint lacks any allegations explaining how plaintiff knows that inmates with COVID-19 (1) are housed at Franklin C.F., and (2) were transferred in from another correctional facility.  Furthermore, the complaint lacks any allegations which plausibly suggest that plaintiff has been in contact with any inmate infected with COVID-19.  Thus, there is no basis for the Court to plausibly infer that a dangerous condition sufficient to satisfy the objective prong is present at Franklin C.F.  *See, e.g.*, *Martinez v. Lape*, No. 9:09-CV-0665 (TJM/RFT), 2011 WL 4527943, at *8 (N.D.N.Y. Mar. 28, 2011) ("[T]his Court need not decide now whether a continued exposure to H. pylori constitutes a sufficiently serious condition, as Plaintiff alleges no specific facts to support his conclusory assertion. To bolster his claims, Plaintiff alleges that a few other inmates have also gotten sick, presumably due to exposure to H. pylori. But even taking the existence of their illnesses as true, this fact alone does not raise his claim above a speculative level."), *report and recommendation adopted by* 2011 WL 4528980 (N.D.N.Y. Sept. 28, 2011); *Cherry v. Edwards*, No. 01-CV-7886, 2005 WL 107095, at *8 (S.D.N.Y. Jan. 18, 2005) ("Contrary to the Plaintiffs' assertion, the fact that eight inmates out of a total population of more than 500 inmates tested positive for the H. pylori antibody in a single year does not suggest that there was a particular problem . . . because it appears undisputed that H. pylori is 'the most common infection

17

worldwide,' that more than half the people in the United States are infected by the time they reach their 40s.").

Moreover, the complaint lacks any allegations which plausibly suggest that any official at Franklin C.F. has acted, or failed to act, with the requisite culpability for a finding of deliberate indifference.

Accordingly, plaintiff's conditions-of-confinement claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Fourteenth Amendment Due Process Claim

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)).  Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

As a threshold matter, it appears that plaintiff may be seeking to challenge the fact or duration of his sentence based on his claim that the Time Allowance Committee improperly withheld good time credits.  Insofar as this is correct, it is well-settled that a habeas petition is the vehicle by which a prison inmate may challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

In any event, even assuming, without deciding, that plaintiff's Section 1983 claim is cognizable, the Second Circuit has generally stated that where "good time" credits have not

been earned—and there is no allegation that they were earned in this case—"there is no constitutionally protected interest in them because of the discretionary nature of their award." *Hirsch v. Pernat*, 684 Fed. App'x 53, 55-56 (2d Cir. 2017) (citing *Abed v. Armstrong*, 209 F.3d 63, 67 (2d Cir. 2000)); *see also Edwards v. Ladlair*, No. 07-CV-0059, 2008 WL 3156214, at *4 (N.D.N.Y. Aug. 4, 2008) ("[G]ranting or withholding of good time is a discretionary matter subject to the prisoner meeting and maintaining the requirements for eligibility."), *aff'd sub nom. Edwards v. Goord*, 362 Fed. App'x 195 (2d Cir. Jan. 26, 2010).

Furthermore, even if plaintiff had a minimal due process right in not having good time credits withheld arbitrarily, the complaint is devoid of any allegations which plausibly suggest that defendants Traynor and Quimby, or any other member of the Time Allowance Committee, acted arbitrarily.

To the contrary, plaintiff has attached documents to the complaint showing that he received notice from the Time Allowance Committee on February 13, 2020, of a hearing scheduled for February 19, 2020, to address the committee potentially recommending that he not be awarded the total good time authorized to him based on his refusal to participate in certain programs.  Dkt. No. 1-1 at 20.

Moreover, the complaint is devoid of any allegations which plausibly suggest that plaintiff was prevented from participating in the hearing, and plaintiff does not allege how this hearing, or any other aspect of the apparent decision to revoke his credits, was procedurally deficient.  In other words, the complaint lacks any allegations which plausibly suggest that, in apparently reaching a decision to withhold good time credits based on plaintiff's failure to participate in certain programs, members of the Time Allowance Committee denied plaintiff due process.  *See, e.g., Adams v. Annucci*, No. 17-CV-3794, 2020 WL 1489787, at *9 n.14

19

(S.D.N.Y. Mar. 27, 2020) ("[C]ourts have recognized that hearings before the TAC prior to revocation of good time credits constitute sufficient due process." (collecting cases)).

Accordingly, plaintiff's Fourteenth Amendment due process claims against defendants Traynor and Quimby are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D.     Nature of Dismissal

Based on the foregoing, plaintiff's complaint is dismissed under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  In light of his pro se status, the Court will afford plaintiff the opportunity to file an amended complaint with respect to those claims dismissed without prejudice.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

Any such amended complaint, which shall supersede and replace in its entirety the previous complaint filed by plaintiff, must bear his original signature, and must contain a caption that clearly identifies, by name, each individual that plaintiff is suing in the present lawsuit and must bear the case number assigned to this action.

The body of plaintiff's amended complaint must set forth a short and plain statement of the facts he relies on in support of his claim that the individual named as a defendant engaged in misconduct or wrongdoing that violated plaintiff's constitutional rights, in sequentially numbered paragraphs containing only one act of misconduct per paragraph.

Thus, if plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct

occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and (v) the nexus between such misconduct and plaintiff's civil and/or constitutional rights.

Plaintiff is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV.    PRELIMINARY INJUNCTION MOTION

In plaintiff's one-page Preliminary Injunction Motion, he appears to request an injunction enjoining the named defendants, along with their successors, agents, and employees, from subjecting him to "seriousness of harm[,]" and directing that he be transferred to another correctional facility.  *See* Preliminary Injunction Motion.  Plaintiff has also filed an affidavit, apparently in support of his request for injunctive relief.  Dkt. No. 5 ("Affidavit").

In light of the preliminary dismissal of plaintiff's complaint without prejudice, the Court need not and will not address the merits of plaintiff's motion, which is denied as moot.[6]

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**.[7]  The Clerk shall provide the superintendent of the facility, designated by plaintiff as his current location, with a

---

[6]  In the event plaintiff files a proper amended complaint as set forth herein, he may renew his request for injunctive relief.

[7]  Plaintiff should note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

copy of plaintiff's authorization form (Dkt. No. 3), and notify the official that this action has

been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00

pursuant to 28 U.S.C. § 1915; and it is further

> **ORDERED** that the Clerk shall provide a copy of plaintiff's authorization form (Dkt. No.

3) to the Financial Deputy of the Clerk's Office; and it is further

> **ORDERED** that plaintiff's Section 1983 claims for monetary relief against Franklin

Correctional Facility and the named defendants in their official capacities are **DISMISSED**

**with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred

by the Eleventh Amendment and for failure to state a claim upon which relief may be

granted;[8] and it is further

> **ORDERED** that the remaining claims are **DISMISSED without prejudice** pursuant to

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which

relief may be granted; and it is further

> **ORDERED** that plaintiff's Preliminary Injunction Motion (Dkt. No. 4) is **DENIED**

**without prejudice** as set forth above; and it is further

> **ORDERED** that if plaintiff wishes to proceed with this action, he must file an amended

complaint as directed above within thirty (30) days from the filing date of this Decision and

Order; and it is further

> **ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned

---

[8] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez*, 171 F.3d at 796. However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Because these claims are barred by the Eleventh Amendment, leave to amend to assert these claims would be futile.

to the Court for further review; and it is further

     **ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  In that event, the Clerk is directed to close this case; and it is further

     **ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

     **ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated:  May 11, 2020
       Utica, New York.

_____
United States District Judge

23